**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 26-CR-110-PAB

UNITED STATES OF AMERICA,

Plaintiff,

v.

CALEB RUPP,

Defendant.

---

**DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT (DOC. #18)**

---

Defendant Caleb Rupp, by and through counsel and pursuant to Fed. R. Crim. P. 32(f), hereby submits his objection to the Presentence Investigation Report (Doc. #18, hereinafter the "Report").

**OBJECTIONS**

As further set forth below, Mr. Rupp objects to the following paragraphs of the Report.

**A. The Offense Conduct ¶ 18**

The Report states that ATF contacted and interviewed Caleb on August 13, 2024, but omits important context. The ATF agent left his business card with the FFL, Damage Factory, Inc. The card was given to Caleb, who immediately called the agent and left a voicemail. The August 13, 2024 call was the agent returning Caleb's call, not an unsolicited contact initiated by ATF.

**B. Short-Barreled Rifle and Resulting Offense Level ¶¶ 20, 24, 36, 45, 80-81**

The Report adopts the Government's position that one of the guns Caleb raffled was a short-barreled rifle ("SBR"), which makes it a firearm described at 26 U.S.C. § 5845(a) and results in an increased base offense level of 18 pursuant to USSG § 2K2.1(a)(5). (Doc. #18, ¶¶ 20, 24, 36). As stated in Caleb's Plea Agreement, the parties disagree on that point. The government contends that the gun is an SBR, resulting in the increased offense level, while Caleb believes that the gun at issue does not meet the definition of an SBR so the base offense level is 12 pursuant to USSG 2K2.1(a)(7). *See* Doc. 15 at 7. The government bears the burden of establishing that the SBR enhancement applies. *United States v. Munoz-Tello*, 531 F.3d 1174, 1181 n. 12 (10th Cir. 2008) ("The government bears the burden of proving each element of a sentencing enhancement.") (citations omitted). Because the government cannot meet that burden, the Report's adoption of the SBR enhancement is incorrect.

The gun in question is a Palmetto State Armory PA-15, 5.56x45mm caliber, serial number SCD403631 (the "PA-15"). The PA-15 is a pistol configuration weapon with a barrel length under 16 inches and a pistol grip. In that configuration, the PA-15 is considered a pistol, not a rifle, and is legal to possess without registration.

The PA-15 was initially sold by Hammer Down Firearms, a federally licensed firearms dealer ("FFL") in Wheat Ridge, Colorado. The PA-15 was designated in the sale documents as a "pistol." Caleb subsequently obtained the PA-15 in a private transfer with a Magpul CTR stock already attached. Upon taking possession, Caleb sent a picture of it to a friend who responded that the attachment looked like a shoulder

stock and could convert the PA-15 into an SBR. Caleb immediately detached the "stock" from the PA-15.[1]

Caleb kept the PA-15 and the stock separated and possessed the gun for about three months until he raffled it off to Namir Lopez-Jurado, an officer with the Denver Police Department. Caleb then transferred the PA-15 to Mr. Lopez-Jurado through Damage Factory, Inc., a Greenwood Village, Colorado FFL. Damage Factory designated the PA-15 as a "pistol" in the transfer documents. Caleb provided the separated stock to Mr. Lopez-Jurado, but informed him of the potential SBR issue and advised him not to attach the stock to the PA-15. Mr. Lopez-Jurado said he had other firearms which would receive the stock.

The guideline that provides the base level for Caleb's offense is USSG § 2K2.1. It generally provides for a base offense level of 12, *see* USSG § 2K2.1(a)(7), but increases the base level to 18 "if the offense involved a firearm described in 26 U.S.C. 5845(a)." USSG § 2K2.1(a)(5). That statutory provision, 26 U.S.C. § 5845(a), defines a "firearm" to include "a rifle having a barrel or barrels of less than 16 inches in length." 26 U.S.C. § 5845(a). The statute, in turn, defines a "rifle" as:

> a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.

26 U.S.C. § 5845(c).

---

[1] For simplicity, and without conceding that the attachment is a "stock" that makes the PA-15 an SBR rather than a legal brace, this document refers to the attachment as the "stock."

The federal regulations interpreting the firearms statutes provide further guidance on the SBR question, repeating the definition of "rifle" and further stating:

> (1) For purposes of this definition, the term "designed or redesigned, made or remade, and intended to be fired from the shoulder" shall include a weapon that is equipped with an accessory, component, or other rearward attachment (e.g., a "stabilizing brace") that provides surface area that allows the weapon to be fired from the shoulder, provided other factors, as described in paragraph (2), indicate that the weapon is designed, made, and intended to be fired from the shoulder.
>
> (2) When a weapon provides surface area that allows the weapon to be fired from the shoulder, the following factors shall also be considered in determining whether the weapon is designed, made, and intended to be fired from the shoulder:
>
> > (i) Whether the weapon has a weight or length consistent with the weight or length of similarly designed rifles;
> >
> > (ii) Whether the weapon has a length of pull, measured from the center of the trigger to the center of the shoulder stock or other rearward accessory, component or attachment (including an adjustable or telescoping attachment with the ability to lock into various positions along a buffer tube, receiver extension, or other attachment method), that is consistent with similarly designed rifles;
> >
> > (iii) Whether the weapon is equipped with sights or a scope with eye relief that require the weapon to be fired from the shoulder in order to be used as designed;
> >
> > (iv) Whether the surface area that allows the weapon to be fired from the shoulder is created by a buffer tube, receiver extension, or any other accessory, component, or other rearward attachment that is necessary for the cycle of operations;
> >
> > (v) The manufacturer's direct and indirect marketing and promotional materials indicating the intended use of the weapon; and
> >
> > (vi) Information demonstrating the likely use of the weapon in the general community.

27 C.F.R. § 479.11.

In its 2018 decision in *United States v. Cox*, 906 F.3d 1170 (10th Cir. 2018), the Tenth Circuit Court of Appeals addressed the constitutionality of the statutory restrictions on SBRs in light of *District of Columbia v. Heller*, 554 U.S. 570 (2008). The

Tenth Circuit determined that SBRs fall in the category of "weapons not typically possessed by law-abiding citizens for lawful purposes" and therefore fall "outside the Second Amendment's guarantee." 906 F.3d at 1185-86. More recently however, in the aftermath of *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), and the Supreme Court's emphasis on the "historical tradition of firearm regulation," 602 U.S. at 691, at least one court has questioned whether the designation of SBR's and the related regulations and penalties could withstand Supreme Court scrutiny. That court discussed at length the arbitrary distinction made between unregulated handguns and SBRs, and concluded that "it's unclear why SBRs as a class would be 'dangerous' enough to fall within a tradition of regulating 'dangerous and unusual' arms." *United States v. Grissom*, 2026WL1127417, *7 (M.D. Fla. 2026).

But irrespective of the constitutionality of restrictions on SBRs generally, treating the PA-15 as an SBR for purposes of sentencing Caleb is particularly arbitrary and not supported by the governing statutes and regulations. First, Palmetto State Armory promotional materials available on its website advertise the PA-15 as a legal pistol. *See* https://palmettostatearmory.com/psa-ar-15-10-5-carbine-5-56-1-7-nitride-classic-pistol-w-har-15-pistol-brace.html#compliance. The stock the government relies on to make it an SBR differs only in small details from "braces" that are legally sold with the PA-15 and are not considered to convert it into an SBR. Specifically, the only meaningful difference between a legal "brace" attached to the buffer tube and the purportedly illegal "stock" is a few millimeters of diameter at the back end. *Compare* https://magpul.com/btr-arm-brace-mil-spec.html?mp_global_color=118 *with*

*https://magpul.com/ctr-carbine-stock-mil-spec.html?mp_global_color=118*. The same weapon cannot rationally be treated as an unlawfully unregistered "dangerous arm" rather than a legal pistol based on such a meaningless distinction.

Moreover, even if the stock "provides surface area that allows the weapon to be fired from the shoulder," 27 C.F.R. § 479.11(1), (2), the other factors listed in the regulation and necessary to make the weapon an SBR do not weigh in favor of deeming the PA-15 an SBR.[2] The PA-15's overall length and "length of pull," 27 C.F.R. § 479.11(2)(i-ii) are consistent with a pistol, not a rifle, as shown by the FFL transfer documents deeming it a "pistol" and Palmetto State Armory's marketing of the PA-15 in pistol configurations. In the photos of the PA-15 possessed by Caleb, the gun is not "equipped with sights or a scope with eye relief that require the weapon to be fired from the shoulder in order to be used as designed." 27 C.F.R. § 479.11(2)(iii). Indeed, the Palmetto Arms website states unequivocally that the PA-15 "does not have provisions for a front sight to be mounted on the barrel." Rather, the promotional materials "indicating the intended use of the weapon," 27 C.F.R. § 479.11(2)(iv), state explicitly that the PA-15 is a "pistol," and there is nothing to indicate that the "likely use of the weapon in the general community," 27 C.F.R. § 479.11(2)(v) – with or without a "stock" – is as anything other than a pistol. Thus, irrespective of whether the stock is wide enough to "allow[ ] the weapon to be fired from the shoulder," all other relevant and necessary definitional criteria show that the PA-15 is a pistol not a rifle.

---

2 The ATF technical report in which the investigating agents conclude the PA-15 is an SBR does not engage with these criteria in any meaningful way. The agents simply deem the attachment a "shoulder stock" and therefore presume that the weapon is designed to be fired from the shoulder. (Doc. #18-3 at 4).

The conclusion that the PA-15 was not an SBR when transferred is reinforced by *United States v. Thompson/Center Arms Co.*, 504 U.S. 505 (1992). In that case the Supreme Court held that a pistol and separate conversion components did not constitute a short-barreled rifle under the NFA when they were not assembled into the prohibited configuration. The same principle applies here. Mr. Rupp transferred the PA-15 as a pistol without the stock attached and expressly warned the recipient not to assemble it as an SBR. The mere possibility that a stock *could* be attached does not convert an unassembled pistol into a short-barreled rifle.

Finally, even if the PA-15 could be considered a rifle when attached to the stock in question, it was not so attached when transferred by Caleb. Rather, as soon as Caleb learned that the stock might be viewed as converting the PA-15 into an SBR, he detached the stock from the gun. There is no evidence indicating that Caleb ever kept the gun and stock assembled, as all photos Caleb took of the PA-15 show it without the stock. He then transferred the PA-15 through an FFL and separately provided Mr. Lopez-Jurado the stock, while cautioning him about the SBR issue. The PA-15 therefore was not "equipped with" with the stock for purposes of the regulations when possessed and transferred by Caleb. 27 C.F.R. § 479.11(1); *see also United States v. Rodriguez*, 841 F. Supp. 79, 83 (E.D.N.Y. 1994) (whether a firearm is "equipped" with a silencer "turns on the circumstances of the particular case" and "depends on the physical closeness between the weapons as well as the ease with which they can accept one another.").[3]

---

[3] This interpretation – that Caleb's provision of the stock separate from the PA-15 means the PA-15 was not "equipped with" with the stock – is supported by other statutory language defining a rifle. The definition of "rifle" includes the requirement that

For these reasons and others, categorizing the PA-15 as an SBR is inconsistent with ATF guidance and recent trends. As noted by former ATF Acting Chief Rick Vasquez, ATF internal procedures recognize that removal of the stock can "take the firearm out of NFA classification," as does storage of the stock with other compatible weapons. (Ex. A, Vasquez Report at 4). Further, the distinction between a "stock" that is alleged to create an SBR and a "stabilizing brace" that does not often is not readily apparent and ATF guidance on the stabilizing braces has shifted over time. *Id.* at 6-7. Mr. Vasquez therefore opines that the PA-15 Caleb transferred "was not a short-barreled rifle under the NFA." *Id.* at 7.

In sum, the attachment Caleb received when he acquired the PA-15 does not differ from an unregulated stabilizing brace in any meaningful way, and even if it "provides surface area that allows the weapon to be fired from the shoulder," the other relevant criteria to be considered per the regulations show that it does not turn the PA-15 into a rifle. Even if it could, moreover, the fact that Caleb carefully separated the attachment and the PA-15 demonstrates that he never intended to create an SBR, and in fact was careful to prevent the PA-15 from being "equipped with" the attachment. The PA-15 at issue is not an SBR, so the proper base offense level is not 18 as stated in the Report, (Doc. #18, ¶ 36), it is 12. Caleb's total offense level therefore is not 21,

---

the weapon fire a "fixed cartridge" or "may be readily restored to fire a fixed cartridge." 26 U.S.C. § 5845(c). Had the drafters of the regulations similarly intended the definition of a rifle to include guns that may be "readily restored" to be fired from the shoulder by attaching a stock, they could have included that language in 27 C.F.R. § 479.11. That they instead chose the more limited term "equipped with" demonstrates that the definition was not intended to extend to a pistol and a separately provided stock that could "readily restore" the pistol to a rifle.

(Doc. #18, ¶ 45), it is 15, and the guideline sentencing range is not 37 months to 46 months incarceration, (Doc. #18, ¶¶ 80-81), it is 18 to 24 months.

**C. Total Monthly Cash Flow ¶ 76**

The Report is incomplete regarding Caleb's firearms. All of Caleb's firearms have been transferred through an FFL and are no longer in his possession or control. Three firearms are currently pending consignment sale through an FFL, and four have been gifted to a friend.

**D. Variance Recommendation ¶ 94**

Caleb agrees with the Report that his personal history and characteristics and the nature of the offense justify a downward variant sentence. Caleb intends to file separately a motion for variant sentence and notes only that, with or without a different offense level calculation based on the SBR issue, Caleb believes that his personal characteristics and the nature of this offense merit a variance to a sentence to probation.

Dated this 11th day of August 2026, in Denver, Colorado.

*s/ Douglas I. Richards*
Douglas I. Richards
**RICHARDS CARRINGTON, LLC**
1444 Blake Street
Denver, Colorado 80202
Telephone: 303-962-2690
Facsimile: 303-962-2691
Email: doug@richardscarrington.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2026, I electronically filed the foregoing **DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT (DOC. #18)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Al Buchman
Al.Buchman@usdoj.gov
*Attorney for the Government*

*s/ Claire Webb*
Claire Webb, Paralegal